**BID PROCEDURES HEARING DATE: JUNE 1, 2016**
**BID PROCEDURES HEARING TIME: 4:30 P.M.**

**SALE HEARING DATE:  TBA**
**SALE HEARING TIME:  TBA**

**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for Brooklyn Events LLC*
*Debtor and Debtor-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
In re:                                                        :
                                                              :        Chapter 11
BROOKLYN EVENTS LLC,                                          :
                                                              :        Case No.:  16-41371 (CEC)
                                    Debtor.                   :
                                                              :
------------------------------------------------------------:x

**DEBTOR'S MOTION FOR ORDERS PURSUANT TO SECTIONS 105(a) AND 363(b), 363(f), 363(m) AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 6006 (I) AUTHORIZING AND APPROVING ENTRY INTO A LEASE PURCHASE AGREEMENT AND GRANTING BID PROTECTIONS TO THE STALKING HORSE PURCHASER; (II) APPROVING (A) BID PROCEDURES AND NOTICE OF THE AUCTION RELATING THERETO, AND (B) ASSUMPTION, ASSIGNMENT AND SALE OF THE DEBTOR'S INTEREST IN UNEXPIRED LEASE AND RELATED ASSETS TO THE STALKING HORSE PURCHASER OR A PARTY MAKING A HIGHER AND BETTER OFFER, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

TO:    THE HONORABLE CARLA E. CRAIG
        CHIEF UNITED STATES BANKRUPTCY JUDGE

Brooklyn Events LLC ("Brooklyn Events") as debtor and debtor-in-possession (the

"Debtor" or "Seller"), hereby moves this Court (the "Sale Motion"):  (i) for the entry of an order

(the "Bid Procedures Order") pursuant to 11 U.S.C. §§ 105(a), 363 and 365, Rules 6004 and

6006 of the Federal Rules of Bankruptcy Procedure, Rule 6004-1 of the Local Bankruptcy Rules

for the Eastern District of New York and pursuant to the Sale Guidelines adopted by

Administrative Order 557 (a) authorizing the Debtor to enter into, and approving the form of,

that certain sale agreement (together with the related sale documents, the "Lease Purchase

Agreement" or "Agreement") for the sale (the "Sale") of the Debtor's interest in a written lease

dated February 15, 2012 between Grandfield Realty Corp., as landlord (the "Landlord") and

Debtor, as tenant (the "Lease") for the premises located at 60 North 11th Street, Brooklyn, NY

(the "Premises") to 54N11BK, LLC (the "Buyer" or "Stalking Horse Purchaser"), as more

particularly described in the Lease Purchase Agreement, (b) approving the bidding procedures

(the "Bid Procedures"), break-up fee, including granting administrative expense status to the

break-up fee; (c) scheduling an auction (the "Auction") if a qualified competing bid (other than

the Stalking Horse Purchaser is timely received) and a sale hearing, and (d) approving the form

of notice of such Sale Procedures and Bid Procedures, the Auction and the Sale; and (ii) after

completion of the Sale Hearing, entry of an order (the "Sale Order") pursuant to 11 U.S.C. §§

105(a), 363 and 365 and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (a)

authorizing and approving the Sale to Buyer or to another qualified bidder submitting a higher or

otherwise better offer (the "Successful Bidder") free and clear of all liens, claims, encumbrances

and interests, (b) approving the Stalking Horse Purchase Agreement, (c) authorizing the

assumption and assignment of the Lease, and (d) granting related relief.  In support of the

Motion, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.       By this Motion, the Debtor seeks to sell its interest in the Lease and related

personal property contained in the Premises (exclusive of Martin Audio sound system [the

"Sound Equipment"] and certain leased equipment, primarily kitchen equipment) (the "Personal

Property") (the Lease and Personal Property collectively, the "Purchased Assets") for a total consideration of $400,000 cash to 54N11BK, LLC (or such entity that submits a higher bid), and establish procedures for the sale, including approval of bid procedures and bid protections to the Stalking Horse Purchaser.  As more fully discussed below, the Debtor believes the Stalking Horse Purchaser has presented the Debtor with a fair and appropriate offer to purchase the Purchased Assets.

## JURISDICTION AND VENUE

2.       The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.       The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 363 and 365, Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Bankruptcy Rules").  The Debtor also relies upon the amended guidelines adopted pursuant to Administrative Order 557.

## GENERAL BACKGROUND

4.       On March 31, 2016 (the "Petition Date"), Brooklyn Events commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court" or "Court").  The Debtor intends to continue in possession of its property and operating its business as a debtor in possession in accordance with Bankruptcy Code sections 1107 and 1108 pending the sale of substantially all of the Debtor's assets.

5.      No trustee or committee of creditors has been appointed in the Debtor's case.

**A.      The Debtor's Business, Corporate History, And Capital Structure**

6.      Brooklyn Events is a New York limited liability company organized under the laws of the State of New York with its principal office at 54-60 North 11th Street, Brooklyn, NY 11249. Brooklyn Events operates a 10,000 square foot dance nightclub under the name "Verboten" at the Premises located in trendy Williamsburg, Brooklyn.  As of the Petition Date, the Debtor employed approximately 28 full and part time employees.  Currently, the Debtor is operating on a limited basis in order to preserve cash and minimize operating losses.  Jennifer Schiffer and John Perez are the co-managing members of the Debtor.  The Debtor raised capital from several investors who each own membership interests in the Debtor.  The Debtor also borrowed on a secured basis approximately $1.8 million.  This loan has been paid down to approximately $1 million, and is secured by substantially all of the Debtor's hard assets other than its real property Lease.

**B.      Events Leading To The Chapter 11 Case**

7.      The Debtor's chapter 11 case was filed as a result of the seizure of the Debtor's Premises and related assets by the New York State Department of Taxation and Finance ("NYSDT") on March 30, 2016.  As a result of the filing, the Debtor was able to regain the Premises and is once again operating its business from the Premises.  The Debtor, in the exercise of its business judgment, has determined that due to the Debtor's pressing liquidity issues it is in the Debtor's best interests to proceed with a prompt Sale of the Purchased Assets at this time, in order to preserve and maximize the value of its primary asset, the Lease.

**C.      Assets**

8.      Pursuant to the Sale Motion, the Debtor seeks approval of the sale (the "Sale") of the Lease and Personal Property (excluding the Sound Equipment and certain leased equipment located at the Premises) to the Buyer for the purchase price of $400,000 ($350,000 of which is

allocated to the Lease and $50,000 to the Personal Property), all as more fully set forth in the Agreement attached hereto as **Exhibit "A."**

### D.    <u>The Proposed Sale</u>[1]

9.    The Debtor and Buyer negotiated the Agreement that provides that Buyer will serve as a Stalking Horse Purchaser to facilitate a sale pursuant to Bankruptcy Code §§ 363(b) and (f).

10.    Buyer has offered to (a) pay $400,000 in cash for the Lease, which would be assumed and assigned to Buyer, and for Personal Property (see Schedule II to Agreement).  The Debtor would be responsible for paying any cure costs (the "<u>Cure Costs</u>") related to the assumption and assignment of the Lease to Buyer.  As of the date of this Sale Motion, the Lease arrears total approximately $130,000.[2]  The Buyer will further pay to the Landlord a security deposit equal to six months of the current base rent as required by the Lease and the Debtor will obtain the $120,000 of security deposit currently held by the landlord or these funds will be applied to Cure Costs or available to the bankruptcy estate.

11.    The Debtor negotiated with Buyer the terms of the Bid Procedures, which are designed to establish a fair, open, and competitive postpetition bidding process, subject to the time limitations driven by the Debtor's illiquidity, ongoing negative cash flow and other factors, to facilitate a result that is in the best interests of the Debtor's estate.

12.    The Sale of the Lease and the related Personal Property to Buyer, or to such other purchaser who provides the highest and otherwise best bid for the Lease and Personal Property in

---

[1] The summary of the Agreement is provided for convenience only and is qualified in its entirety by the specific terms of the Agreement.  To the extent that there is any discrepancy, the terms and conditions of the Agreement shall control.

[2] Prior to the Petition Date, the Debtor's landlord had commenced a nonpayment proceeding in the civil court seeking to collect rent arrears or evict the Debtor.  The Debtor asserted various defenses and has sought to abate portions of the rent based upon the landlord's continued failure to cooperate to obtain a final certificate of occupancy, and the landlords failure to remedy damage to the Premises from the construction of an adjacent hotel.  As such, the amount of the Cure Costs is subject to dispute.

accordance with the Bid Procedures, is the best method to obtain the optimal result under the circumstances.

13.     Since the Petition Date, the Debtor and its professionals through its various contacts have had discussions with at least three other potential purchasers.  One potential purchaser made an offer in excess of the current stalking horse offer, but this offer was expressly contingent upon the Debtor's landlord agreeing to provide extension options and make other modifications to the Lease.  This potential purchaser does not intend to utilize the leased Premises as a nightclub.  The Debtor will continue to explore the possibility of a Sale conditioned upon the landlord's cooperation which would require modifications to the Lease.  However, the Debtor cannot force the landlord to agree to such modifications.  When considering alternative transactions to the stalking horse bid, the Debtor will take into account numerous factors such as whether the offer includes certain equipment, or requires modifications of the Lease.

**E.     The Bid Procedures, The Auction And The Sale Hearing**

14.     The Debtor requests that the Bid Procedures be established to govern the Sale process.  The Debtor will entertain bids for the Lease, Personal Property, and the Sound Equipment to ensure that the Debtor achieves the best price for the Debtor's assets under all of the circumstances.[3]  As described below, if the Debtor receives at least one Qualified Bid (as defined below) prior to the bid deadline, then the Debtor intends to conduct the Auction to determine the highest and otherwise best offer for the Lease and Personal Property (and possibly the Sound Equipment).

---

[3] As set forth above, the stalking horse offer does not include the Sound Equipment, which is the Debtor's most valuable asset other than the Lease.  The Sound Equipment is subject to a lien which is greater than the value of the Sound Equipment.  The Debtor's broker will seek to sell the Sound Equipment as a whole or in separate lots in the event the highest and best bid for the Lease excludes the Sound Equipment.

1. **The Bid Procedures**[4]

15.     The Debtor seeks to establish June 20, 2016 as the deadline (the "Bid Deadline")
by which prospective bidders must submit a deposit and written binding bids to purchase the
Lease and Personal Property, as well as the Sound Equipment, if desired.   Only timely bids
meeting all of the requirements of a Qualified Bid made by a Qualified Bidder (as defined
below), will be eligible for participation in the Auction.   This Bid Deadline is not arbitrary; it is
based, in part, on the fact that the Debtor's cash flow for the next several weeks is extremely
tight and the Debtor hopes to close the Sale by the end of June to avoid the accrual of July
administrative rent.

16.     The Bid Procedures provide for potential bidders to conduct due diligence until
the Bid Deadline.   The potential bidders will be required to provide current financial statements
or other evidence demonstrating the party's financial capability to consummate the Sale before
conducting the due diligence.

17.     For all other bidders, to be a Qualified Bidder, a party must submit a Qualified
Bid (as defined in the Bid Procedures), and be deemed by the Debtor in the exercise of its
reasonable business judgment to be financially able to consummate the proposed purchase of the
Lease and Personal Property.

18.     The Debtor seeks to establish June 22, 2016 as the Auction date.   If the Debtor
does not receive a Qualified Bid, then the Debtor will not proceed with the Auction and will seek
approval of a sale to the Stalking Horse Purchaser on the terms of the Agreement at the Sale
Hearing.   If the Debtor receives at least one Qualified Bid, then the Debtor proposes to conduct a
competitive Auction.   The Debtor requests that the Court schedule a Sale Hearing to confirm the
results of the Auction promptly after June 22, 2016.

---

[4] This summary is provided for convenience only and is qualified in its entirety by the Bid Procedures attached
hereto as **Exhibit "B"**.   To the extent that there is any discrepancy, the terms and conditions of the Bid Procedures
shall control.   Interested parties are urged to read the Bid Procedures in full.

19.    The Debtor, in consultation with its professionals and broker shall (i) determine which Qualified Bid at the Auction is the highest and otherwise best offer (the "<u>Successful Bid</u>"). This determination shall take into account any factors the Debtor and its professionals, reasonably deem relevant to the value of the Qualified Bid to the estate and may include, among other things, the following: (a) the amount and nature of the consideration; (b) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (c) the net benefit to the estate, taking into account the Stalking Horse Purchaser's rights to the Break-Up Fee, and (d) whether any bid is contingent upon the landlord agreeing to modifications/extensions to the Lease.

20.    Once the Qualified Bidder with the highest and best bid is identified (the "<u>Successful Bidder</u>"), the Debtor will submit the Successful Bid for approval by the Court. The Sale Hearing may be adjourned or continued at the Debtor's discretion and the Court's schedule, provided however that if the Stalking Horse Purchaser is the Successful Bidder then the Sale Hearing shall not be adjourned (unless extended with the express written consent of the Stalking Horse Purchaser or as adjourned by the Court).

21.    The Bid Procedures contain the following provisions, which are more fully described in the Bid Procedures outlined above:

> **<u>Qualified Bidders:</u>** To become a Qualified Bidder a proposed bidder must provide financial information establishing its ability to perform, and: (i) provide a cash deposit of 10% of the cash purchase price of such bid; (ii) be on same or better terms than the terms of the Lease Purchase Agreement; (iii) each Bid must be based on the Lease Purchase Agreement and include (a) a purchase agreement signed by the Qualified Bidder and (b) a blackline reflecting the bidder's proposed changes to the Lease Purchase Agreement; (iv) propose a minimum purchase price comprised of each of the following (a) cash consideration in an amount that is at least equal to the aggregate consideration provided by the Lease Purchase Agreement, **plus** (b) $25,000 representing the break-up fee payable to the Stalking Horse Purchaser, and (c) $10,000, but in no event, less than $35,000 above the consideration provided by the Lease Purchase Agreement; (v) include written evidence reasonably accepted to the Debtor demonstrating corporate authority to consummate the bid; and (vi) provide written evidence of a firm commitment for financing or other evidence of the financial wherewithal of such bidder that the Debtor reasonably believe provides the ability to consummate the Sale and satisfy the standards to provide adequate assurance of future

performance under Bankruptcy Code Section 365. Each bid must be irrevocable and not contingent, and submitted before the bid deadline.

**Bid Protections to Buyer:** If Buyer is not the Successful Bidder or if the Agreement is terminated by the Debtor pursuant to Section 16, then Buyer shall be entitled to a break-up fee of $25,000 (as defined in the Agreement)(the "Break-Up Fee"), with the obligation of the Debtor to pay such Break-Up Fee deemed an allowed administrative expense claim under section 503(b) of the Bankruptcy Code, senior to all other administrative expenses claims, in the Chapter 11 Case, and deemed a reasonable, necessary cost and expense of disposing of the Purchased Assets, under Section 506(c) of the Bankruptcy Code.

**Modification of Bidding and Auction Procedures:** The Debtor shall determine, (a) which Qualified Bid, if any, is the highest, best, and/or otherwise financially superior offer; and (b) reject at any time before entry of orders of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Debtor, its estate and creditors. The Debtor, in the exercise of its fiduciary obligations, may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with these Bid Procedures or the Stalking Horse Purchase Agreement.

**Closing with Backup Bidders:** The Debtor reserves the right to seek approval of the second best bid as a Back-Up bid and may seek approval at the Sale Hearing to close the Sale to that back-up bidder if the Successful Bidder fails to close for any reason.

**Provisions Governing the Auction:** The Debtor and its professionals shall direct and preside over the Auction. The Auction shall be held at 10:00 a.m. on June 22, 2016, at the offices of Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018. During the Auction, bidding shall begin initially with the highest and best Qualified Bid, as determined by the Debtor in accordance with the Bid Procedures. All Bids made thereafter shall be Overbids (as defined in the Bid Procedures) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. Each Qualified Bidder participating in the Auction will be required to confirm that it has not engaged in any collusion regarding the Bid Procedures, the Auction or the proposed transaction. The initial minimum overbid will be by $35,000 (inclusive of the Break-Up Fee) and each bid thereafter shall require a minimum additional increment of $25,000. The Bid Protections will be taken into account in each round of bidding. For the avoidance of doubt, during the Auction, any bid by Buyer shall be deemed to be increased by the amount of the Break-Up Fee, provided that in the event that Buyer is the Successful Bidder and its Successful Bid includes the Break-Up Fee, Buyer shall be entitled to credit this amount against the Purchase Price.

**Minimum-Bid Modified Lease Offer:** Any offer for the Lease conditioned upon the Landlord agreeing to extension options and/or other use modifications and possible options for additional space must be in the minimum amount of $750,000 (the "Modified Lease Offer") in order to be considered a Qualified Bid and such offer shall

be accompanied by evidence that the Landlord has agreed to the necessary Lease modifications required by the offeror.  All other bidding procedures set forth in the procedures order shall otherwise apply to a Modified Lease Offer.

22.    Any and all disputes related or pertaining to or resulting or arising from the marketing process, the Auction, the Sale of the Debtor's assets, and/or the conduct of the Debtor, and/or any of the Debtor's professional advisors shall be adjudicated solely by the Bankruptcy Court.  The submission of a bid shall constitute an express consent by the bidder to the exclusive jurisdiction of the Bankruptcy Court for all such matters.  Nothing herein shall be deemed an admission or acknowledgement that any party has standing in respect of such disputes.

23.    The closing of the Sale of the Debtor's assets to such entity that submits the Successful Bid will occur in accordance with the terms of the Agreement or any modified agreement.  If for any reason the party making the Successful Bid fails to consummate the Sale, then the offeror of the second highest and best Qualified Bid will be deemed to have submitted the highest and best Successful Bid, and the Successful Bid shall be the bid which immediately preceded the original, but unconsummated, Successful Bid.  Deposits by Qualified Bidders will be returned or forfeited, as the case may be, as set forth in the Bid Procedures.

24.    The Bid Procedures are designed to maximize value for the Debtor's estate and will enable the Debtor and its professionals to review, analyze and compare all bids received to determine which bids are in the best interests of the Debtor's estate.  The Debtor submits that the Bid Procedures afford the Debtor a sufficient opportunity to pursue a sale process that will maximize the value of its estate.

2.    **The Lease Purchase Agreement**

25.    The following summary highlights the material terms of the Lease Purchase Agreement and the Sale Order and all parties in interest are referred to the text of the attached

Lease Purchase Agreement and Sale Order for additional information.[5]

**Proposed Purchaser.** The Stalking Horse Purchaser is not, and has never been, insiders of, and are in no way related to the Debtor.

**Sellers.** The Debtor.

**Final Purchase Price.** $400,000 cash.

**Closing and Other Deadlines.** The Closing is scheduled to close no later than June 30, 2016.

**Good Faith Deposit.** Buyer has provided a good faith deposit of $40,000 which is being held by Debtor's counsel.

**Tax Exemption.** Any sales, use, property transfer or gains, documentary, stamp, registration, recording or similar Tax (including, for certainty, goods and services tax, harmonized sales tax and land transfer tax) payable solely as a result of the Sale or transfer of the Assets pursuant to this Agreement ("Transfer Taxes") shall (to the extent not subject to an exemption under the Bankruptcy Code) be borne by Buyer. The Debtor and Buyer shall use reasonable efforts and cooperate in good faith to exempt the Sale and transfer of the Lease (and Related Assets, if applicable) from any such Transfer Taxes. Buyer shall prepare and file all necessary Tax Returns or other documents with respect to all such Transfer Taxes.

**Findings as to Successor Liability.** Buyer is conditioning its willingness to acquire the Lease on a finding that it is not a mere continuation of the Debtor or its estate and there is no continuity of enterprise between Buyer and the Debtor. Buyer is not holding itself out to the public as a continuation of the Debtor. Buyer is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger or de facto merger of Buyer and the Debtor. Buyer seeks a provision of the Sale Order that shall vest it with title to the Lease and, upon the Debtor's receipt of the Purchase Price, that title shall be free and clear of all Liens, Claims, Encumbrances and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability.

**Sale Free and Clear.** Upon the terms and subject to the conditions set forth in the Lease Purchase Agreement, the Debtor shall sell, assign, convey, transfer and deliver to the Stalking Horse Purchaser, and the Stalking Horse Purchaser shall purchase from the Debtor, all of the Debtor's right, title and interest in the Purchased Assets (and Sound Equipment, if applicable), free and clear of all liens, claims, encumbrances and interests.

**Relief from Bankruptcy Rules 6004(h) and 6006(d).** The Debtor is seeking a waiver of the fourteen (14) day stay under Bankruptcy Rules 6004(h) and 6006(d) for the reasons discussed below.

---

[5] Capitalized terms used in this summary but not otherwise defined herein shall have the meanings ascribed to them in the Lease Purchase Agreement. To the extent that there are any inconsistencies between the description of the Lease Purchase Agreement or the Sale Order contained herein and the Lease Purchase Agreement or the Sale Order, as applicable, the terms of the Lease Purchase Agreement or the Sale Order, as applicable, control.

26.     The Debtor believes that the foregoing transaction is in the best interests of the Debtor (and is the best available transaction under the current circumstances). The Debtor submits that all negotiations with Buyer were at arms' length, were fair and reasonable, and the fruit of such negotiations will inure to the benefit of the Debtor's bankruptcy estate.  The Debtor respectfully requests that this Court approve the relief requested herein.

3.     **Assumption and Assignment Noticing Procedures**

27.     To facilitate and consummate the Sale of the Lease, the Debtor seeks authority to assume and assign the Lease following the Auction, if any, pursuant to Section 365(f) of the Bankruptcy Code under the Agreement.

a.     **Notices for Assigned Lease.** On or before three (3) business days after the entry of the Bid Procedures Order, the Debtor shall serve by first class mail or hand delivery on the Landlord to the Lease a Notice that identifies, (a) Buyer as the counterparty to the Lease, (b) any applicable cure amount for the Lease, and (c) the deadline (the "Objection Deadline") by which the Landlord must file an objection (a "Lease Objection") to the proposed assumption and assignment.

b.     **Objections to Assumption of Lease.** All objections to the Assumption and Assignment of the Lease must be filed no later than 5:00 p.m. (prevailing Eastern Time) on the date that is seven (7) days prior to the Sale Hearing.   A Lease Objection must set forth the specific default alleged under the Lease and claim a specific monetary amount that differs from the applicable cure amount, if any, and/or further information required of the Stalking Horse Purchaser with respect to adequate assurance of future performance.  Notwithstanding the foregoing, the Landlord shall retain the right to object, at the Sale Hearing, to the assumption and assignment of its Lease based solely on the issue of whether the Successful Bidder or Backup Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code in the event the Stalking Horse Purchaser is not the Successful Bidder.  If no Lease Objection is filed by the Landlord, then the Landlord to the Assigned Lease shall be deemed to have waived and released any right to assert an objection to the assumption and assignment of the Lease and to have otherwise consented to such assumption and assignment and cure amount, and the assignment will be deemed effective in accordance with the Sale Order.  If the Landlord timely files a Lease Objection that cannot be resolved by the Debtor and the Landlord, the Court shall resolve such Lease Objection prior to assumption and assignment of the Lease, and upon entry of an order by the Court resolving such Lease Objection, the assignment shall be deemed effective in accordance with the Sale Order.

28.     If the Landlord fails to timely file a Lease Objection it shall be forever barred and

estopped from objecting thereto, including asserting against the Debtor or the Debtor's estate, Buyer or other Successful Bidder that any additional cure or default amounts are due or conditions to assumption and assignment must be satisfied under the Lease and shall be deemed to consent to the assumption and assignment of the Lease effectuated in connection therewith.

29.    A properly filed and served Lease Objection will reserve such objecting party's rights against the Debtor with respect to the relevant cure objection, but will not constitute an objection to the remaining relief requested in the Sale Motion.  Similarly, if the only objection by the landlord is the Cure Costs the Debtor will request that the Cure Costs be escrowed pending resolution or settlement.

## RELIEF REQUESTED

30.    By this Sale Motion, the Debtor seeks: (a) entry of the Bid Procedures Order (i) approving bidding procedures in connection with the Sale of the Lease and Personal Property (and Sound Equipment, if applicable), (ii) authorizing the Debtor to enter into the Lease Purchase Agreement and approving certain stalking horse bid protections, (iii) approving the form and manner of notice of the Sale Hearing, and (iv) approving certain procedures related to the assumption and assignment of the Lease; and (b) following the Sale Hearing, entry of a Sale Order: (i) authorizing the Debtor to sell the Lease and Personal Property (and Sound Equipment, if applicable) to the Successful Bidder; (ii) authorizing the assumption and assignment of the Lease, and determining the amount of any cure payment required to be paid in connection therewith; (iii) finding that the Successful Bidder: (x) is a good faith purchaser of the Lease and Personal Property (and Sound Equipment, if applicable); (y) is qualified to acquire the Lease and Personal Property (and Sound Equipment, if applicable); and (z) therefore will acquire the Lease and Personal Property (and Sound Equipment, if applicable) in good faith within the meaning of section 363(m) of the Bankruptcy Code; and (iv) waiving the fourteen (14) day stay requirements

of Bankruptcy Rules 6004(h) and 6006(d).

## BASIS FOR THE RELIEF REQUESTED

**A.     Conducting a Public Auction Pursuant to the Sale Procedures is in the Best Interests of the Estate and the Creditors**

31.     Section 363(b) of the Bankruptcy Code provides that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  A proposed use or sale of property pursuant to section 363(b) is appropriate if "some articulated business judgment" exists for the transaction. See, e.g., Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) (quoting Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.), 780 F.2d 1223, 1226 (6th Cir. 1986)); Fulton State Bank v. Schipper (In re Fulton State Bank), 933 F.2d 513, 515 (7th Cir. 1991).  The Debtor seeks approval of the Bid Procedures as a means to maximize the value of the recovery for its creditors through the Sale of the Purchased Assets (and Sound Equipment, if applicable).

### 1.     The Proposed Bid Procedures Will Maximize the Value of the Assets by Allowing Competing Bidders to Participate in an Auction

32.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997) (stating that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); In re Integrated Res.. Inc., 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the Debtor's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting In re Atlanta Packaging Prods., Inc., 99 B.R. 124, 130 (Bankr. N.D. Ga. 1998)).  Pursuing the Agreement represents a reasonable exercise of the Debtor's business judgment and is in the best interests of all parties.

33.     Here, the proposed Bid Procedures will allow and encourage interested parties to

submit competing bids at the Auction, thereby maximizing the value that the Debtor will receive for the Lease and Personal Property (and Sound Equipment, if applicable), yet at the same time ensure that any Qualified Bid provides more than what Buyer has offered.  By inviting others to participate in the Auction, the Debtor will be able to determine the highest and best price possible for the Purchased Assets.  At the same time, the Debtor will be marketing the sale of the Sound Equipment by interested parties either as part of a bid for the Purchased Assets or separately.  The Debtor has filed an application to retain a broker to market the Lease both to club owners and for other users.  The Bid Procedures will increase the likelihood that the Debtor will receive the greatest consideration possible for the Lease and Personal Property (and Sound Equipment, if applicable) and will facilitate a competitive and fair bidding process.

## 2.    Potential Bidders Will Have Time to Conduct Due Diligence

34.    The Debtor's broker, MYC & Associates, Inc. ("Broker") will market and send notice of the Sale Motion and Bidding Procedures to all parties that the Broker believes may be potentially interested in acquiring the Lease and Personal Property (and Sound Equipment, if applicable) promptly after the Court's consideration of the proposed Bid Procedures.  Since the Petition Date, the Debtor's management has been reaching out to other club owners in the New York area and well-known DJs and advising that the Debtor's business, including the Lease, is available for sale.  In the last week, the Debtor has shown the Premises to two other potentially interested parties and the Debtor will actively market the Lease both as a turnkey nightclub operation and to other potential end users.  The Bid Procedures will allow any prospective bidders and other interested parties time before the Bid Deadline to conduct any due diligence required.  If other interested parties are discovered, the Debtor will provide every possible opportunity to such parties to conduct the due diligence such parties need to submit the best possible Qualified Bid.  Therefore, potential bidders will have time to conduct due diligence with

respect to the Lease and Personal Property (and Sound Equipment, if applicable).

### 3.    The Debtor Will Provide Full and Accurate Disclosure of the Terms of the Sale to Potential Bidders

35.    The terms of the Sale of the Purchased Assets will be contained in the Agreement, the form of which will be provided to each potential bidder.  Potential bidders will also receive a copy of the Bid Procedures Order and the Bid Procedures.  Therefore, the Debtor will have provided full and accurate disclosure of the terms of the prospective Sale of the Lease and Personal Property to all potential bidders.

36.    For all of these reasons, the Court should approve the Bid Procedures as a sound exercise of the Debtor's business judgment.

### 4.    The Break-Up Fee Is Appropriate

37.    In order to compensate the Stalking Horse Purchaser for its time, effort, expense, and risk that it incurred in negotiating, documenting, and seeking to consummate the Sale, the Bid Procedures also provide that if the Stalking Horse Purchaser is not the Successful Bidder, and if an alternative transaction closes, the Stalking Horse Purchaser will be entitled to the Break-Up Fee, which shall constitute an administrative expense in the Debtor's bankruptcy case.

38.    Bid protections are a normal and, in many cases, necessary components of sales conducted under the Bankruptcy Code:

> Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets .... In fact, because the... corporation ha(s) a duty to encourage bidding, break-up fees can be *necessary* to discharge [such] duties to maximize values.

*Integrated Resources,* 147 B.R. at 659-60 (emphasis in original).  Specifically, "breakup fees and other strategies may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *995 Fifth Ave.,* 96 B.R. at 28 (quotations omitted).  *See also Integrated Resources,* 147 B.R. at 660-61 (break-up

fees can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); *In re Hupp Indus., Inc.,* 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("without such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's . . . due diligence").

39.     As a consequence, courts frequently approve bid protections in connection with proposed bankruptcy sales.  Courts considering the propriety of proposed bid protections typically consider "(1) whether the relationship of the parties who negotiated the fee is marked by self-dealing or manipulation; (2) whether the fee hampers, rather than encourages, bidding; and (3) whether the amount of the fee is reasonable in relation to the proposed purchase price." *In re Twenver, Inc.,* 149 B.R. 954, 956 (Bankr. D. Colo. 1992); *accord, In re Bidermann Indus. U.S.A., Inc.,* 203 B.R. 547, 552 (Bankr. S.D.N.Y. 1997); *Integrated Resources,* 147 B.R. at 657.

40.     The Break-Up Fee is fair and reasonable in amount, particularly in view of the efforts that have been and will be expended by the Stalking Horse Purchaser.  Moreover, without the proposed Break-Up Fee, the Debtor risks losing the Stalking Horse Purchaser's offer to the detriment of the estate.  The Debtor believes that the Break-Up Fee will not deter or chill bidding.

41.     In sum, the Debtor's ability to offer the Break-Up Fee enables it to ensure the sale of the Debtor's Lease and Personal Property at a price that it believes to be fair while, at the same time, providing it with the potential of even greater benefit to the estate.  Thus, the Break-Up Fee should be approved.  Accordingly, the proposed Break-Up Fee is reasonable and appropriate under the circumstances.

**B.     The Debtor Has Articulated a Reasonable Business Justification for the Sale of the Assets**

42.     Ample justification exists for approval of the proposed Sale of the Lease and

Personal Property (and Sound Equipment, if applicable). Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

43.    A sale of a debtor's assets outside of the ordinary course of business should be approved if supported by a sound business purpose. See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Global Crossing Ltd., 295 B.R. 726 (Bankr. S.D.N.Y. 2003); see also Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Dai-Ichi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Trans World Airlines, Inc., No. 01-00056 (PJW), 2001 WL 1820326, at *10 (Bankr. D. Del. Apr. 2, 2001).

44.    Courts typically consider the following factors in determining whether to approve a sale under section 363: (i) whether a sound business justification exists for the sale; (ii) whether adequate and reasonable notice of the sale was given to interested parties; (iii) whether the sale will produce a fair and reasonable price for the property; and (iv) whether the parties have acted in good faith. See In re Del. & Hudson Ry., 124 B.R. at 176; In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); In re United Healthcare Sys., Inc., No. 97¬1159, 1997 WL 176574, at *4 and n.2 (D.N.J. Mar. 26, 1997).

45.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. See, e.g., In re Abbotts Dairies of Pa. Inc., 788

F.2d 143 (3d Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983).  In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  See Four B Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir. 1997) (In bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." (quoting Cello Bag Co. v. Champion Int'l Corp.In re Atlanta Packaging Prods., Inc.), 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988), appeal dismissed, 3 F.3d 49 (2d Cir. 1993).

46.     Furthermore, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Comm. of Asbestos Related Litigants and/or Creditors v. Johns Manville Corp. (In re Johns Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." In re Integrated Res., 147 B.R. at 656 (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).  Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1).  Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions.  See Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.), No. 89 C 593, 1989 WL 106838, at *3 (N.D. 111. Sept. 8, 1989) ("Under this test, the debtor's business judgment ... must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's

retained discretion.").

### 1.    Sound Business Justification Exists

47.    The Debtor has proposed the sale of the Lease and Personal Property after thorough consideration of all viable alternatives and has concluded that the Sale is supported by many sound business reasons, most important of which is that the Debtor is accruing administrative rent and barely breaking even on a cash basis with its limited operations. The "melting ice cube" analogy identified by the Second Circuit in the Chrysler chapter 11 case is certainly applicable here. The Debtor identified Buyer as having the wherewithal to purchase the Lease and Personal Property on an expedited basis. The Debtor negotiated the Agreement with Buyer as set forth above and the proposed Bid Procedures have been designed to maximize the purchase price realized from the Sale of the Lease and Personal Property. Furthermore, the postpetition marketing of the Lease and Personal Property up to the proposed deadline for competing bids will provide a sufficient opportunity to generate any potential overbids and maximize recovery of the Debtor's creditors.

### 2.    The Notice of the Sale of the Lease and Related Assets Will Be Accurate and Reasonable Under the Circumstances

48.    As set forth above, the Debtor will provide accurate and reasonable notice of the Sale of the Lease and Personal Property under all of the facts and circumstances of this case.

### 3.    The Price For the Assets Will Be Fair and Reasonable

49.    The adequacy of purchase price is generally the function of whether the price was reached in good faith. In re Apex Oil Co., 92 B.R. 847, 874 (Bankr. E.D. Mo. 1988) (holding that the consideration was adequate where it was negotiated in good faith); In re Embrace Sys. Corp., 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) (denying motion to sell where there was no evidence that the asset was diligently or sufficiently marketed). Here, the purchase price for the Lease and Personal Property (and Sound Equipment, if applicable) will be set at the Auction with

competitive bidding.  Thus, the Debtor believes that the purchase price for the Purchased Assets (and Sound Equipment, if applicable) will be the best price and will be fair and reasonable.

50.    The Debtor believes that it will be able to obtain the best offer available in the time allowed by its existing lack of liquidity through the Auction, in accordance with the Bid Procedures, and that the Purchase Price it will obtain for the Lease and Personal Property (and Sound Equipment, if applicable) will be the highest and best offer the Debtor could obtain for such assets.  See In re Integrated Res., Inc., 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), aff d, 147 B.R. 650 (S.D.N.Y. 1992) (stating that the purchase price is fair and reasonable if it is the highest and best offer).  The Debtor's compliance with the Bid Procedures Order and the Bid Procedures will provide the basis to find that any sale of the Lease and Personal Property does not constitute a fraudulent transfer because the purchase price represents reasonably equivalent value and is fair and reasonable.  It will also establish that the Debtor and the Stalking Horse Purchaser, or any other Successful Bidder, have proceeded in good faith.

**4.    The Proposed Sale of the Lease and Related Assets Will Be Pursuant to the Stalking Horse Purchase Agreement, which is the Product of Good Faith**

51.    Although section 363(b) of the Bankruptcy Code does not explicitly require good faith, courts have also required that a sale be made in good faith.  In re Ewell, 958 F.2d 276, 281 (9th Cir. 1992).  The Sale of the Lease and Personal Property (and Sound Equipment, if applicable) to the Successful Bidder is proposed in good faith.  Whether a proposed sale is in "good faith" focuses principally on the element of special treatment of the debtor's insiders in the sale transaction.  Id.; In re Industrial Valley Refrigeration & Air Conditioning Supplies, Inc., 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

52.    The Sale of the Lease and Personal Property (and Sound Equipment, if applicable) will be on the basis of Qualified Bids received by the Debtor by the Bid Deadline,

and if more than one Qualified Bid is received, then the best bid will be determined pursuant to the Auction.  The bid of $400,000 will be tested through a competitive marketing and bidding process.  Furthermore, any bids submitted by potential buyers will be required to identify each entity that will be participating in such bid, and provide sufficient financial and other information regarding both the prospective bidder and all other parties participating in the bid to satisfy the Debtor with respect to the requirements enumerated in section 363(m) of the Bankruptcy Code.  Accordingly, regardless of who ultimately acquires the Lease and Personal Property, the Sale will be the product of good faith.

## C.    The Bankruptcy Court Should Approve the Assumption by the Debtor of the Lease

53.    As stated above, to facilitate and effect the Sale of the Lease, the Debtor seeks authority to assume and assign the Lease to the Successful Bidder.

54.    Section 365(a) and (b) of the Bankruptcy Code authorizes debtors to assume executory contracts or unexpired leases subject to the Court's approval, and requires debtors to satisfy certain requirements at the time of assumption.  Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing in relevant part that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default ... ;
> (B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> (C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

55.    The standard that is applied by the Second Circuit in determining whether an

executory contract or unexpired lease should be assumed is the debtor's "business judgment" that the assumption is in its economic best interests.  See, e.g., In re Child World, Inc., 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992).  It is well established that a court should approve a debtor's motion to assume or reject an executory contract or unexpired lease where doing so will provide a benefit to the debtor's estate.  See, e.g., In re Balco Equities, Inc., 323 B.R. 85, 99 (Bankr. S.D.N.Y. 2005) ("In determining whether the debtor has employed reasonable business discretion, the court for the most party must only determine that the rejection will likely benefit the estate.") (citation omitted).

56.    In the present case, the Debtor's assumption and assignment of the Lease to the Successful Bidder meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code.  The assumption and assignment of the Lease is necessary in order to sell the Lease.  Further, the proposed notice procedures ensure that the Landlord will have ample notice of such relief and an opportunity to contest any asserted Cure Amount, as well as the ability of the Successful Bidder to provide adequate assurance of future performance.

57.    Consequently, the Debtor submits that the proposed notice procedures are fair and reasonable and respectfully request that the Court approve the notice procedures and authorize the Debtor to assume and assign the Lease to the Successful Bidder.

**D.    The Debtor Has Satisfied the Other Provisions of Section 365 of the Bankruptcy Code Regarding Assumption of the Assigned Contracts**

58.    In addition to the business judgment test, section 365(b)(1) of the Bankruptcy Code provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default ... ;
>
> (B)    compensates, or provides adequate assurance that the trustee will promptly

compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss resulting from such default; and

(C)    provides adequate assurance of future performance under such contract or lease.

59.    The notice of the Sale will advise the Landlord that to the extent it believes that there is an existing default under the Lease which requires a cure payment, the Landlord must object to the assumption and assignment of the Lease and will have an opportunity to raise its objection at the Sale Hearing.  The Debtor will attempt to resolve any such objections before the assumption of the Lease becomes effective.  However, in view of the prepetition landlord/tenant dispute and a likely disagreement on the cure cost, if the Debtor and the landlord fail to reach an agreement, the Debtor will request that the full amount of the Cure Costs asserted by the landlord be escrowed so that the Sale can close.

60.    Further, as discussed in detail below, the Debtor will require any prospective bidder to provide evidence as to such bidder's ability to provide adequate assurance of future performance.  Thus, the Debtor has satisfied the statutory requirements for assumption, and the Court should approve the decision to assume the Lease as a proper exercise of its business judgment.

**E.    The Court Should Approve the Assignment of the Lease to the Successful Bidder as the Successful Bidder Can Provide Adequate Assurance of Future Performance**

61.    To assign a contract or lease, a debtor must assume the contract or lease under section 365(b) of the Bankruptcy Code and provide adequate assurance of future performance. 11 U.S.C. § 365(f)(2).  The Debtor has satisfied the requirements for assumption and assignment pursuant to section 365(f)(2) of the Bankruptcy Code.

62.    First, the Debtor will satisfy the assumption criteria as discussed above at the Sale Hearing.  Second, the financial capability of and willingness to perform the post-assignment obligations under the Lease by the Successful Bidder will constitute sufficient "adequate assurance of future performance" to justify the proposed assumption and assignment.  See, e.g.,

In re Tech Hifi, Inc., 49 B.R. 876, 879 (Bankr. D. Mass. 1985) ("Adequate assurance of future performance with respect to the source of rent to be paid means that the proposed assignee has the ability to satisfy the financial obligations imposed by the lease.  An absolute guarantee, such as a letter of credit, is not required to meet this standard."); In re PPK Enters., Inc., 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999); In re THW Enters., Inc., 89 B.R. 351, 357 (Bankr. S.D.N.Y. 1988).

63.    Buyer will provide information demonstrating that it will have adequate resources to perform on a going forward basis to provide adequate assurance of future performance under the Lease.  Furthermore, as part of any Qualified Overbid, the prospective purchaser will have to submit evidence of the prospective purchaser financial ability to close the transaction and provide adequate assurances of performance.

64.    In the event there is any objection by a non-debtor party to the Lease, the Debtor intends to supplement the Sale Motion with further evidence related to the abilities of the prospective bidders to perform under the Lease prior to the Sale Hearing.

65.    Accordingly, the Debtor respectfully requests that the Court determine that at the time of the Sale Hearing, the Debtor and the Successful Bidder will have complied with the requirements of section 365(f)(2) of the Bankruptcy Code and approve the assumption and assignment of the Assigned Contracts to the Successful Bidder.

**F.    The Sale of the Lease Should Be Free and Clear of Liens, Claims, Encumbrances, and Interests**

66.    Section 363(f) of the Bankruptcy Code provides that the Court may authorize a sale of property of the estate, "free and clear of any interest in such property of an entity other than the estate," if:

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater

than the aggregate value of all liens on such property;

(4)    such interest is in *bona fide* dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); In re General Bearing Corp., 136 B.R. 361, 363-64 (Bankr. S.D.N.Y. 1992).

67.    The Debtor appears to have three secured creditors, one of whom has a blanket lien on all of the Debtor's personal property, which lien will attach to the sale proceeds allocated to the Personal Property.[6]  The remaining two secured creditors/equipment lessors have liens on specific property in accordance with lease agreements.  Such property is not part of the Personal Property to be sold.

68.    Any holder of a security interest in the Purchased Assets will be served with a copy of the Sale Motion and will be given an opportunity to object.  To the extent that they do not object to the Sale Motion, they should be deemed to have consented to the proposed Sale under section 363(f)(2) of the Bankruptcy Code.  See, e.g., FutureSource, LLC v. Reuters, Ltd., 312 F.3d 281 (7th Cir. 2002), cert. denied, 538 U.S. 962 (2003) (holding that failure to object may constitute consent, if there was adequate notice).

69.    Moreover, pursuant to section 363(f)(5) of the Bankruptcy Code, a free and clear sale is permissible when the interest holders can otherwise be compelled, in a legal or equitable proceeding, to accept a money satisfaction of their interests.  11 U.S.C. § 363(f)(5).  See In re Gulf States Steel, 285 B.R. 497, 508-509 (Bank. N.D. Ala. 2002) (permitting sale free and clear of a steel mill under section 365(f)(5) over objections where each of the liens or interest could be compelled to accept a money satisfaction in a cram down plan in chapter 11); see also In re P.K.R. Convalescent Centers, Inc., 189 B.R. 90 (Bankr. E.D. Va. 1995) (allowing the sale of nursing home assets under § 363(f)(5) over objection where interest was reducible to a claim and

---

[6] If the Debtor's blanket lienholder is not happy with the sale proceeds from the sale of the Personal Property or the allocation of the sale proceeds in the case of an overall bid, the secured creditor can either credit bid or the Debtor will abandon the Personal Property and allow the secured creditor to dispose of its collateral as it sees fit.

subject to a hypothetical money satisfaction).  Importantly, section 363(f)(5) does not require that the sale price for the property must exceed the value of the interests, but rather, only that the mechanism exists to address extinguishing the lien or interest without paying such interest in full.  See Gulf States, 285 B.R. at 508.

70.    Because the Debtor expects that it will satisfy one or more of the requirements of section 363(f) of the Bankruptcy Code, as will be demonstrated at the Sale Hearing, approving the Sale of the Lease and Related Assets free and clear of all interests is warranted.

**G.    The Successful Bidder is Entitled to Good Faith Purchaser Status Pursuant to Section 363(m) of the Bankruptcy Code**

71.    As noted above, the Debtor requests as part of the approval of the proposed Sale that the Court find that the Successful Bidder is qualified to acquire the Lease and Personal Property (and Sound Equipment, if applicable) and will do so in good faith within the meaning of section 363(m) of the Bankruptcy Code.  To be a Qualified Bidder at the Sale Hearing, any potential bidder must provide sufficient financial and other information regarding both the prospective bidder and all other parties participating in the bid to satisfy the Debtor with respect to the requirements enumerated in section 363(m).

72.    Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith...." 11 U.S.C. § 363(m). Under section 363(m) of the Bankruptcy Code, "an appeal of a bankruptcy court's ruling on a foreclosure action [or sale] generally cannot affect the rights of a good faith purchaser of the foreclosed property, unless the debtor for other complaining party] stays the foreclosure [or other] sale pending an appeal." Mann v. Alexander Dawson, Inc. (In re Mann), 907 F.2d 923, 926 (9th Cir. 1990). "[T]he primary goal of the mootness rule [embodied in section 363(m)] 'is to protect the

interest of a good faith purchaser ... of the property,' thereby assuring finality of sales." <u>Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)</u>, 846 F.2d 1170, 1173 (9th Cir. 1988) (quoting <u>Community Thrift & Loan v. Suchy (In re Suchy)</u>, 786 F.2d 900, 901-02 (9th Cir. 1985)).  That goal is important in this case because the Successful Bidder needs assurance that the purchase of the Lease and Personal Property will not be subject to future attack by objecting creditors.  Such assurance is necessary to generate the maximum purchase price for such Lease and Personal Property.

73.    Lack of good faith for purposes of section 363(m) of the Bankruptcy Code is generally determined by the existence of fraudulent conduct or insider dealing during the sale process.  <u>See, e.g.</u>, <u>In re Exennium, Inc.</u>, 715 F.2d 1401 (9th Cir. 1983).  In this case no such conduct or dealings have occurred as of the date of the Sale Motion and will not occur prior to the Sale Hearing.  All bidders will have to identify each entity that will be participating in such bid, including any proposed designee(s), and provide sufficient financial and other information regarding both the prospective bidder and all other parties participating in the bid to satisfy the Debtor with respect to the requirements enumerated in section 363(m).

74.    The protection of section 363(m) of the Bankruptcy Code is appropriate in this case because the proposed Sale transaction will be the product of an open auction in Court and, to the extent necessary, arm's-length, good faith negotiations between the Debtor, on the one hand, and the Successful Bidder, on the other.

## H.    <u>The Court Should Waive the Fourteen Day Stay of the Sale Order</u>

75.    The Debtor's ability to generate sufficient cash to pay its operating expenses after the Sale Hearing is problematic.  If the Sale of the Lease and Personal Property (and Sound Equipment, if applicable) cannot be consummated immediately following the Auction and the Sale Hearing, it is uncertain whether the Debtor can generate sufficient cash flow to operate.

Accordingly, the Debtor requests that the automatic fourteen (14) day stay under Bankruptcy Rules 6004(h) and 6006(d) be waived.

**I.    The Manner of Notice and Schedule for the Bid Deadline and the Auction and Sale Hearing Are Reasonable and Appropriate Under the Circumstances**

76.    The Debtor also respectfully requests that the Court approve the manner of notice of the proposed Auction and Sale Hearing.  The Debtor submits that this relief will facilitate the Sale process and enable the Debtor to provide interested parties with adequate and sufficient notice of the Auction and related matters.

77.    The Debtor proposes to give notice of the Bid Procedures Order, the Auction and the Sale Hearing in the following manner.  Within three (3) business days after entry of the Bid Procedures Order (the "Mailing Date"), the Debtor will serve notice of the Auction ("Notice of Auction and Sale Hearing"), and a copy of the Bid Procedures Order, which will contain various dates and deadlines, by first class mail, to those parties identified in the Bid Procedures Order, including (i) the U.S. Trustee; (ii) the Debtor's twenty (20) largest unsecured creditors; (iii) counsel to 54N11BK, LLC; (iv) all taxing authorities having jurisdiction over any of the assets, including the Internal Revenue Service; (v) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (vi) all parties that are known or reasonably believed to have expressed an interest in acquiring the Lease and Personal Property; (vii) all parties that are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Lease, Personal Property or the Sound Equipment; (viii) all governmental agencies that are an interested party with respect to the Sale and transactions proposed thereunder; (ix) the Landlord; and (x) all other known creditors of the Debtor (collectively, the "Auction and Sale Notice Parties").

78.    Those parties who desire a copy of the Bid Procedures Order and/or the Lease Purchase Agreement, and do not receive such papers pursuant to the preceding paragraph, may

contact counsel for the Debtor, Tarter Krinsky & Drogin LLP.  The Debtor submits that the foregoing notice is reasonably calculated to provide timely and adequate notice to the Debtor's creditors and other parties in interest, and also to all those who may bid on the Lease and Personal Property.  Accordingly, the Debtor submits that such notice constitutes good and sufficient notice under the circumstances with respect to the Sale Motion, all proceedings to be held thereon, and the entry of an order or orders granting all of the relief requested herein.  The Debtor further submits that no further notice need be given.

79.    The Debtor submits that the proposed notice procedures of the Bid Procedures, Auction, Sale Hearing, assumption and assignment of the Lease, and all related objection deadlines, comply fully with Bankruptcy Rule 2002 and constitutes good and adequate notice of the Sale.  The Debtor respectfully requests that this Court approve the notice procedures proposed above and in the proposed Bid Procedures Order.

## NO PRIOR REQUEST

80.    No previous request for the relief sought herein has been made to this or any other Court.

## NOTICE

81.    The Debtor proposes to serve a Notice of the Motion and all exhibits by hand delivery or overnight delivery upon (i) the Office of the United States Trustee for the Eastern District of New York; (ii) the Debtor's twenty (20) largest unsecured creditors as set forth on the Debtor's list required by the Bankruptcy Rules; (iii) Kane Kessler, P.C., counsel to 54N11BK, LLC, the proposed Stalking Horse Purchaser; and (iv) all parties entitled to notice under Local Rule 2002, including all entities which have filed UCC1 financing statements or have asserted a security interest in any of the Purchased Assets (the "Bid Procedures Notice Parties").

82.    The Debtor believes that the foregoing notice procedures to the Bid Procedures

Notice Parties, the Auction and Sale Notice Parties and other parties in interest is sufficient to provide effective notice of the Sale Procedures, the Auction and the Sale to potentially interested parties in a manner designed to maximize the chance of obtaining the broadest possible participation while minimizing the costs to the estate.  Accordingly, the Debtor requests that the Court find that notice in this manner is sufficient and that no further notice of the Auction or the Sale Procedures is required.

**WHEREFORE**, the Debtor respectfully requests that this Court enter the Bid Procedures Order (attached hereto as **Exhibit "B"**): after a hearing, currently scheduled for June 1, 2016 at 4:30 p.m., (a) approving the Sale Procedures; and (b) scheduling an Auction and Sale Hearing. In addition, the Debtor respectfully requests that this Court at the Sale Hearing enter an order: (a) authorizing the Debtor to sell, assume, and assign the Lease free and clear of all liens, claims, encumbrances, and interests, and (b) approving the Lease Purchase Agreement.  The Debtor further requests that this Court grant such other and further relief as is just and proper.

Dated: New York, New York
      May 20, 2016

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Brooklyn Events LLC*
*Debtor and Debtor-in-Possession*


By:    /s/ Scott S. Markowitz
       Scott S. Markowitz
       Arthur Goldstein
       Rocco A. Cavaliere
       1350 Broadway, 11th Floor
       New York, New York 10018
       (212) 216-8000
       smarkowitz@tarterkrinsky.com
       agoldstein@tarterkrinsky.com
       rcavaliere@tarterkrinsky.com