| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>---------------------------------------------------------------x | **Hearing Date/ Time:** 6/1/2016 @ 4:30 pm |
| In re | Chapter 11 |
| BROOKLYN EVENTS, LLC d/b/a<br>VERBOTEN, | Case No. 16-41371(CEC) |
| Debtor. | |
| ---------------------------------------------------------------x | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION
FOR ORDERS PURSUANT TO SECTION 105(A) AND 363(B), 363(F), 363(M)
AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004
AND 6006 (I) AUTHORIZING AND APPROVING ENTRY INTO A LEASE
PURCHASE AGREEMENT AND GRANTING BID PROTECTIONS TO THE
STALKING HORSE PURCHASER; (II) APPROVING (A) BID PROECURES
AND NOTICE OF THE AUCTION RELATING THERETO, AND
(B) ASSUMPTION, ASSIGNMENT AND ALL OF THE DEBTOR'S INTEREST
IN UNEXPIRED LEASE AND RELATED ASSETS TO THE STALKING
HORSE PURCHASER OR A PARTY MAKING A HIGHER AND BETTER
OFFER, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this objection (the "Objection") to the motion (the "Motion") of Brooklyn Events LLC d/b/a Verboten (the "Debtor") for orders pursuant to section 105(a) and 363(b), 363(f), 363(m) and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006 (i) authorizing and approving entry into a lease purchase agreement and granting bid protections to the stalking horse purchaser; (ii) approving (a) bid procedures and notice of the auction relating thereto, and (b) assumption, assignment and sale of the Debtor's interest in unexpired lease and related assets to the stalking horse purchaser or a party making a higher and better offer, free and clear of liens, claims, interests and encumbrances; and (iii) granting

related relief. ECF Doc No. 31. In support of the Objection, the United States Trustee represents and alleges as follows:

## I. <u>Summary</u>

For the reasons set forth in his Motion to Convert this Chapter 11 Case to a Case under Chapter 7 (the "Conversion Motion" – ECF Doc. No. 41), which are incorporated by reference herein, the United States Trustee objects to the Debtor's Motion. Specifically, the United States Trustee believes there are sufficient statutory grounds upon which to convert this case based upon gross mismanagement by the Debtor's principals, continuing losses to the estate coupled with an inability to reorganize, as well as the Debtor's failure to: (i) file its monthly operating report; (ii) operate out of an authorized debtor-in-possession account; and (iii) provide documents requested by United States Trustee. Upon conversion, a chapter 7 trustee would be given the opportunity to market and sell the Debtor's unexpired lease, and maximize a recovery for the benefit of the estate. There is no reasonable basis to allow the Debtor to proceed with a sale of its below-market lease on an expedited basis if the case will be converted to chapter 7.

In addition, the Motion seeks the approval of bid procedures, and the assumption, assignment and sale of its interest in an unexpired lease of the real property located at 54-60 North 11st Street, Brooklyn, New York, 11249 (the "Premises") within a time-frame of three weeks from the date of the hearing on the Motion. The United States Trustee believes this abbreviated period of time does not provide the broker sufficient time to market the lease, and may result in a sale that does not maximize value. Moreover, the Motion, if granted, will leave the Debtor with no hard assets that could result in a recovery for general unsecured creditors. For these reasons, the United States Trustee objects to the relief sought in the Motion.

## II. BACKGROUND

**A.     The Chapter 11 Filing**

1.       On March 31, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). According to the petition, Jen Schiffer is the Managing Member of the Debtor. See ECF Doc. No. 1.

2.       The Debtor, which operates a well-known nightclub in Brooklyn under the name Verboten, filed this Chapter 11 case because the New York State Department of Taxation and Finance seized the Premises and its assets on March 30, 2016, due to non-payment of sales tax. See Local Rule 1007-2 Affidavit, ECF Doc. No. 2.[1]

3.       The United States Trustee has not appointed a creditors' committee in this case.

4.       By Order dated May 19, 2016, the Court authorized the retention of Tarter Krinsky & Drogin LLP as counsel to the Debtor. See ECF Doc. No. 29.

5.       Since the Petition Date, the Debtor has operated its business and managed its affairs as a debtor in possession pursuant to Section 1107 and 1108 of the Bankruptcy Code.

**The Debtor's Income, Assets, Liabilities and Capital Structure**

6.       On April 27, 2016, the Debtor filed its schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules"). ECF Doc. Nos. 18 and 19.

7.       According to it Schedules, the Debtor has total assets of $684,294 and total liabilities of $3,836,336. Id.

---

[1] New York State Department of Taxation and Finance filed a proof of claim in the amount of $ 422,115.24 for sales tax relating to tax periods ending in February 28, 2105, May 31, 2015, August 31, 2015, November 30, 2015 and February 29, 2016, based on actual returns. See Claims Docket, Claim No 1. In addition, the Internal Revenue Service filed a priority claim in the amount of $69,823.59 for assessed withholding taxes. Id. Claim No. 3.

8.	The Debtor's principal assets include the lease to the Premises (the "Verboten Lease"), the Verboten Lease deposit of $102,000, sound equipment valued at $370,000, kitchen equipment of $15,000 and office furniture, fixtures, equipment and collectibles valued at $182,000.  Id. at Schedules A and B.

9.	Substantially all of the Debtor's assets, with the exception of the Verboten Lease, are encumbered by a lien held by SWL Enterprises LLC / Pierrepont Ventures, Inc. which is currently owed approximately $ 1 million. See Sale Motion, ECF Doc. No. 31, ¶6.

10.	According to its Schedules, the Debtor owes disputed priority sales tax debt of $442,236, disputed priority Internal Revenue Service tax debt in the amount of $105,803, priority unpaid wage claims of $105,800, and general unsecured debt of $2,106,297  See Schedules E and F.

11.	On March 15, 2016, sixteen employees of the Debtor commenced an action against the Debtor and the Debtor's Principals pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq, alleging, among other things, that the employees were not paid the prevailing minimum wage for all hours worked and premium overtime compensation for all hours worked in excess of 40 hours per week.[2] See Conversion Motion, Exhibit 2, Affidavit of Brian E. McGuinness, sworn to May 24, 2016 (the "McGuinness Affidavit").

12.	According to the Debtor's Federal Tax Returns, from the years 2012 through 2014, the Debtor received capital contributions from approximately 58 investors in an amount totaling $3,661,390.  See  Conversion Motion, Exhibit 3, Declaration of Lynda Rettagliata dated May 26, 2016 (the "Rettagliata Declaration").

---

[2] The case is entitled Suchowieski et al. v. Brooklyn Events, LLC d/b/a "Verboten", Verboten Corporation, Jen Schiffer and John Perez, 16-cv-01295 filed in the United States District Court for the Eastern District of New York.

13.     According to its Federal Tax Return, the Debtor's gross income for 2014 was $5,371,408.  Id.

14.     According to the Statement of Financial Affairs, the Debtor's gross income for 2015 and the first three months of 2016 was $6,233,847 and $933,094, respectively.  See ECF Doc. No. 19, Statement of Financial Affairs, Part 1, Question 1.

**B.     Deficiencies, Improper Conduct and Matters Requiring Investigation**

15.     The Debtor has failed to provide proof that its prepetition bank accounts have been closed and that the Debtor is operating out of debtor-in-possession accounts in accordance with the United States Trustee Guidelines.[3]

16.     As to date, the Debtor has failed to file its operating report for April 2016 which became due on May 20, 2016. See Conversion Motion, Exhibit 1, Martin Declaration.

17.     Upon information and belief, the Debtor is not current with post-petition operating expenses and has failed to pay rent for the months of April and May 2016.[4]

18.     As set forth in the affidavits of Darrin Morda and Thomas Beaulieu, each sworn to May 24, 2016, Schiffer allegedly diverted Debtor funds (including capital contributions made by outside investors) to pay expenses related to the operation of Verboten Corp., and other businesses owned or controlled by the Debtor's Principals.  See Conversion Motion, Exhibit 4, Affidavit of Darrin Morda sworn to May 24, 2016 (the "Morda Affidavit") ¶¶4(a) through (c) and 5(a) and (b)

---

[3] The Debtor provided the United States Trustee's Office with a check for a Bank of America account that was stamped debtor in possession.  However, by email dated May 24, 2016, John Swift, Assistance Vice President with Bank of America advised that the institution has not, and will not, open or service any debtor in possession account for the Debtor. See Conversion Motion, Exhibit 3, Rettagliata Declaration.

[4] Norma Ortiz, Esq., of Ortiz & Ortiz, attorneys for Grandfield Realty Corp., the Debtor's landlord, has advised the United States Trustee's Office that the Debtor has not paid post-petition rent for April and May 2016.  According to the Sale Motion, the Debtor owes $130,000 in pre-petition rent arrears.  Conversion Motion, Exhibit 2, Martin Declaration.

and 8; Conversion Motion, Exhibit 5, Affidavit of Thomas Beaulieu sworn to May 24, 2016 (the "Beaulieu Affidavit"), ¶¶4(a) through (c) and 5(a) and (b) and 8.

19. In addition, it is alleged that the Debtor's Principals used Debtor funds for personal expenses, including personal travel, hotels and rent for their personal residence. Id. at ¶6(a) through (c); Exhibit 2, McGuinness Affidavit, ¶2(h).

20. It is also alleged that Schiffer failed to deposit or otherwise account for the Debtor's cash income from the coat check concession and the sale of Verboten merchandise, manipulated the Point of Sale system in the Verboten nightclub so that cash income at certain registers would not be reported on the Debtor's revenue reports, retained the unreported cash from these registers, and diverted income generated from online sales of tickets for Debtor events through "Resident Advisor" from the Debtor to another entity controlled by the Debtor's Principals. Conversion Motion, Exhibit 4, Morda Affidavit at ¶7(a) through (c); Exhibit 5, Beaulieu Affidavit at ¶7(a) through (c); Exhibit 2, McGuiness Affidavit at ¶2(c).

21. At the 341 Meeting, Schiffer testified that Verboten Corp. and Stage One - entities in which one or more of the Debtor's Principals hold an interest - are affiliates of the Debtor. Conversion Motion, Exhibit 1, Martin Declaration. Despite a request from the United States Trustee, the Debtor has not provided a complete list of all entities in which the Debtor's principals currently hold or have held an interest. Conversion Motion, Exhibit 3, Rettagliata Declaration.

22. As set forth in the McGuinness Affidavit, the Debtor's bank statements show an aggregate of approximately $2 million in transfers between the Debtor, Stage One and Verboten Corp. Conversion Motion, Exhibit 2, McGuinness Affidavit at ¶2 (g).

23. The McGuinness Affidavit references other instances of what has been characterized as Schiffer's gross mismanagement, including consistent failure to make payroll,

causing the Debtor to incur over $20,000 in overdraft expenses, and issuing Debtor checks knowing there were insufficient funds to cover their payment. Conversion Motion, Exhibit 2, McGuinness Affidavit,¶2 (d). These circumstances led to Schiffer's arrest on April 7, 2016 for allegedly writing $36,000 in bad checks from the Debtor's bank account. Id.

24. On April 1, 2016, the United States Trustee's Office (the "UST") provided Tarter, Krinsky & Drogin, LLP, Debtor's counsel, with a list of documents to be produced in connection with this case. See Conversion Motion, Exhibit 3, Rettagliata Declaration.

25. The UST sent a number of follow-up reminders of outstanding documents that had yet to the provided to our Office.

26. As of the date of this Objection, the documents requested be produced to the UST by the Debtor that remain outstanding include the following: (i) sales tax returns for 2014 and 2015; (ii) pre-petition bank statements for all pre-petition accounts; (iii) proof that all pre-petition accounts have been closed; (iv) proof that the Debtor has established three separate DIP accounts: operating, payroll and tax; (v) list of payroll including insider salaries and compensation; (vi) Debtor's privacy policy regarding personally identifiable information; (vii) loan documents for insider and affiliate loans; and (viii) list of all affiliates and entities in which insiders hold an interest. Id.

**C.    The Motion**

27. On May 20, 2016, the Debtor filed its Motion which seeks the approval of bid procedures, assumption, assignment and sale of the Verboten Lease as well as the sale of restaurant equipment and office fixtures and furnishings to the stalking horse purchaser for the sum of $400,000, subject to higher and better offers. ECF Doc. No. 31.

28. Pursuant to the Motion, the Debtor seeks to conduct an auction and/or proceed with the sale of the Verboten Lease and related assets on June 22, 2016. Id. at ¶8.

29. Since the Petition Date, the Debtor has been operating on a limited basis to minimize its losses. See Motion, ¶6.

30. The proposed sale price of the Verboten Lease and related assets to the stalking horse bidder as set forth in the Sale Motion is $400,000. Id. at ¶8.

31. The Sale Motion proposes a very abbreviated time frame for marketing and selling the Verboten Lease – the Debtor's only valuable asset - to maximize value for the bankruptcy estate. Id. at 7.

32. New York State Department of Taxation and Finance filed a proof of claim in the amount of $422,115.24 for sales tax relating to 2015 and 2016 tax periods based on actual returns. See Claims Docket, Claim No 1. In addition, the Internal Revenue Service filed a priority claim in the amount of $69,823.59 for assessed withholding taxes. Id. Claim No. 3.

33. The anticipated proceeds generated from the sale of the Verboten Lease under the terms proposed in the Motion will be less than the amount necessary to satisfy the filed tax claims,[5] making it unclear how the Debtor can propose to repay general unsecured creditors in this case, especially in light of the Debtor's professional fees that would be paid first out of any recovery to the estate.

---

[5] The Debtor's Principals who managed the Debtor's business operations are, in all likelihood, responsible persons who have incurred personal liability for sales and withholding taxes.

### III. <u>OBJECTION</u>

**The Motion Seeking Approval of the Assumption, Assignment and Sale of the Verboten Lease Should Not Be Approved Pending a Determination on the Debtor's Conversion Motion.**

The sworn statements provided by investors and employees submitted in support of the Conversion Motion are strong evidence that Schiffer may have grossly mismanaged the Debtor, and has engaged in deceptive practices with regard to the Debtor's finances. These statements are corroborated by the lack of a reasonable explanation as to why the Debtor, which had over $12 million in revenues and received over $3 million in capital contributions, has been unable to pay its most basic operating expenses during the two years that the Verboten nightclub has been open, including its sales tax obligations, its rent, and its employees, and has left the Debtor mired in debt exceeding $3 million. The Debtor's Principals should not be permitted to continue in management and control of the Debtor or to be involved in the sale process of the Verboten Lease under the terms set out in the Motion.

Moreover, the Debtor lacks sufficient income to reorganize and cannot propose a liquidating plan under the circumstances, because, other than the Verboten Lease, there are no remaining assets available to sell that would yield a recovery for general unsecured creditors. Based upon these facts, it is apparent that the Debtor is unable to confirm a feasible plan and there is no likelihood of rehabilitation.  Accordingly, there is no reasonable basis to allow the Debtor to sell the Verboten Lease under the short time-frame set forth in the Motion, which would strip the Debtor of its only valuable unencumbered asset. In the event the Conversion Motion is granted, and a chapter 7 trustee should be given the opportunity to market and sell the Verboten Lease in the ordinary course, which will increase the likelihood of maximizing the value of this asset for the benefit of the estate.

## IV. CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the relief requested in the Motion be denied.

Dated: New York, New York
       May 31, 2016

                                    Respectfully submitted,

                                    WILLIAM K. HARRINGTON
                                    UNITED STATES TRUSTEE
                                    Region 2

By:   /s/ *Marylou Martin*
        Marylou Martin
        Trial Attorney

        201 Varick Street, Room 1006
        New York, New York 10014
        Tel. No. (212) 510-0500