UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
In re:                                                          :
                                                                :      Chapter 11
BROOKLYN EVENTS LLC                                             :
d/b/a VERBOTEN,                                                 :      Case No.: 16-41371 (CEC)
                                                                :
                           Debtor.                              :
---------------------------------------------------------------- x

## ORDER GRANTING MOTION (A) AUTHORIZING DEBTOR'S ENTRY INTO LEASE PURCHASE AGREEMENT, (B) AUTHORIZING AND APPROVING BIDDING PROCEDURES AND BREAK-UP FEE, (C) APPROVING NOTICE PROCEDURES, (D) SETTING A DATE FOR THE SALE HEARING, AND (E) GRANTING RELATED RELIEF

Upon consideration of the motion [ECF No. 31] (the "Motion")[1] of the above-captioned debtor and debtor in possession (the "Debtor"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), for entry of an order (the "Bid Procedures Order"): (i) authorizing the Debtor to enter into that certain Lease Purchase Agreement dated as of May 20, 2016 (the "Lease Purchase Agreement") between the Debtor and 54N11BK, LLC (the "Stalking Horse Purchaser") for the sale (the "Sale") of (a) the Debtor's interest in a written lease, dated February 15, 2012 between Grandfield Realty Corp., as landlord (the "Landlord") and Debtor, as tenant (the "Lease") at the premises located at 60 North 11th Street, Brooklyn, New York (the "Premises") and (b) personal property contained in the Premises (exclusive of Martin Audio sound system (the "Sound Equipment") and certain leased equipment) (the "Personal Property")(the Lease and Personal Property collectively, the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

"Purchased Assets") free and clear of all liens, claims, interests and encumbrances; (ii) approving bidding procedures (the "Bidding Procedures") to be implemented in connection with such Sale; (iii) establishing the dates, times, and locations of the deadline to bid on the Purchased Assets, the auction of the Purchased Assets (the "Auction"), and the sale hearing to approve the sale of the Purchased Assets (the "Sale Hearing"), and approving the form of notice of each of the foregoing; (iv) approving the form and manner of notice of the Debtor's intent to assume and assign to the Successful Bidder or Backup Bidder (as such terms are defined in the Bidding Procedures), the Lease, and the corresponding cure amount (the "Cure Amount") required to be paid in connection with such assumption and assignment; and (v) granting related relief; and the Court having determined that the relief provided herein is in the best interest of the Debtor, its estate, creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing (the "Bidding Procedures Hearing") on the Motion held before the Court on June 1, 2016, and the full record of this case; and after due deliberation thereon; and good and sufficient cause appearing therefore:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. The Motion and this Bid Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

C. The Debtor has provided due and proper notice of the Motion, the relief sought therein, and the Bidding Procedures Hearing to the parties listed on the affidavit of service [ECF No. 33]. A reasonable opportunity to object or be heard regarding the relief

provided herein with respect to the Motion (including, without limitation, with respect to the Bidding Procedures and Break-Up Fee (as defined below) has been afforded to all parties in interest.  No other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing.

    D.  The Debtor's proposed notice of the Motion, the Bidding Procedures, the Auction, the Sale and the Sale Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

    E.  The Debtor has articulated good and sufficient business reasons for this Court to (i) approve the Bidding Procedures; (ii) approve the Stalking Horse Purchaser as the stalking horse bidder; (iii) approve the Break-Up Fee (the "<u>Break-Up Fee</u>") as provided in the Lease Purchase Agreement; (iv) approve the scheduling of a bid deadline, auction and sale hearing for the sale of the Purchased Assets; and (v) approve the establishment of procedures to fix the Cure Amount to be paid under section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Lease.

    F.  The Break-Up Fee, to the extent payable under the Lease Purchase Agreement, (i) is and shall be deemed an actual and necessary cost and expense of preserving the Debtor's estate within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) is a reasonable, necessary cost and expense of disposing of the Purchased Assets under Section 506(c) of the Bankruptcy Code; (iii) is of substantial benefit to the Debtor's estate, will encourage a competitive bidding process, and will not pose a detriment to unsecured creditors; (iv) is reasonable and appropriate, including in light of the size and nature of the transaction contemplated by the Lease Purchase Agreement, the necessity to announce a sale transaction for the Debtor, and the efforts that have been and will be expended by the Stalking Horse Purchaser;

(v) has been negotiated among the Debtor, the Stalking Horse Purchaser and their respective advisors at arms' length and in good faith, without self-dealing or manipulation; and (vi) is necessary to ensure that the Stalking Horse Purchaser will continue to pursue the proposed transaction.  The Stalking Horse Purchaser has represented to the Debtor that it is unwilling to commit to purchase the Purchased Assets under the terms of the Lease Purchase Agreement unless the Stalking Horse Purchaser is granted the Break-Up Fee.

G. Entry into the Lease Purchase Agreement is in the best interest of the Debtor, the Debtor's estate and its creditors.  The Lease Purchase Agreement will enable the Debtor to secure an adequate floor for the Auction and will provide a clear benefit to the Debtor's estate.  The terms of the Lease Purchase Agreement were negotiated by the Debtor and the Stalking Horse Purchaser in good faith and at arm's length.

H. The Break-Up Fee is fair, reasonable, and appropriate and represents the best method for maximizing the realizable value of the Purchased Assets.

I. The entry of this Bid Procedures Order and the granting of the relief set forth herein are in the best interests of the Debtor, its estate, creditors, and other parties in interest.

J. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The relief requested in the Motion as it relates to the Bidding Procedures and Break-Up Fee, the Debtor's entry into the Lease Purchase Agreement, and the scheduling of,

and notice to be provided with respect to, the sale process, the Auction and the Sale Hearing, is granted and approved as set forth in this Bid Procedures Order.

2. All objections and responses to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The Bidding Procedures, attached hereto as **Exhibit A**, are hereby incorporated into and form a part of this Bid Procedures Order and are approved in their entirety, and shall apply with respect to the sale of the Purchased Assets. The failure specifically to include or reference a particular provision of the Bidding Procedures in this Bid Procedures Order shall not diminish or impair the effectiveness of any such provision. The Debtor is authorized to take all actions necessary or appropriate to implement the Bidding Procedures. In the event of an inconsistency between this Bid Procedures Order and the Bidding Procedures, the Bid Procedures Order shall prevail.

4. The Debtor is hereby authorized to pursue a sale of the Purchased Assets and enter into the transactions contemplated by the Lease Purchase Agreement by conducting an Auction in accordance with the Bidding Procedures.

5. The Debtor is hereby authorized to enter into the Lease Purchase Agreement. The (i) provisions contained in Section 16 and 17 of the Lease Purchase Agreement, and (ii) the Break-Up Fee contained herein and in the Lease Purchase Agreement, including, without limitation, in Section 17 of the Lease Purchase Agreement, are hereby approved, authorized and binding upon the Debtor, its estate, creditors and other parties in interest.

6. Subject to the terms of the Lease Purchase Agreement, the Debtor's obligation to pay the Break-Up Fee shall survive termination of the Lease Purchase Agreement,

shall constitute an administrative claim against the Debtor's estate pursuant to sections 105(a), 503(b) and 364(c)(1) of the Bankruptcy Code and shall be senior to, and have priority over, all other claims against the Debtor, is deemed a reasonable, necessary cost of disposing of the Purchased Assets under Section 506(c) of the Bankruptcy Code, and shall be paid to the Stalking Horse Purchaser as provided in the Lease Purchase Agreement. Without limiting the foregoing, to the extent that the Stalking Horse Purchaser is <u>not</u> the Successful Bidder, (a) the Successful Bidder is authorized and directed to pay the Break-Up Fee directly to the Stalking Horse Purchaser at the closing of any Alternative Transaction (as defined in the Bidding Procedures) with the Successful Bidder; and (b) if for any reason such Successful Bidder fails to pay the Break-Up Fee directly to the Stalking Horse Purchaser, the Debtor is authorized and directed to pay the Break-Up Fee to the Stalking Horse Purchaser from the proceeds of the Alternative Transaction without further order of the Court.

7. Except for the Stalking Horse Purchaser, no other party submitting an offer, Bid or Qualified Bid (as such terms are defined in the Bidding Procedures) for the Purchased Assets shall be entitled to any expense reimbursement or break-up, termination or similar fee or payment.

8. As further described in the Bidding Procedures, the deadline for submitting bids for the Acquired Assets (the "<u>Bid Deadline</u>") is July 13, 2016 at 5:00 p.m. (prevailing Eastern Time). No bid shall be deemed to be a Qualified Bid or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures.

9. If a Qualified Bid(s), other than the bid of the Stalking Horse Purchaser pursuant to the Lease Purchase Agreement, is timely received by the Debtor in accordance with the Bidding Procedures, the Auction shall take place on July 18, 2016 at 10:00 a.m. (prevailing

Eastern Time) at the offices of Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, or such other place and time as the Debtor shall notify all Qualified Bidders, and other invitees. If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held.

10. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

11. The Auction shall be conducted in accordance with the Bidding Procedures.

12. The Auction will be conducted openly.

13. Bidding at the Auction will be transcribed or videotaped.

14. The Sale Hearing shall be held before this Court on July 20, 2016 at 3:00 p.m. (prevailing Eastern Time), or as soon thereafter as counsel and interested parties may be heard.

15. The notices described in subparagraphs (a) – (d) below are approved and shall be good and sufficient, and no other or further notice shall be required if given as follows:

    a. On or before three (3) business days after entry of this Bid Procedures Order, or as soon thereafter as such parties can be identified, the Debtor will cause (a) a notice in substantially the form annexed as **Exhibit B** hereto (the "Notice of Auction and Sale Hearing"); and (b) a copy of the Bid Procedures Order to be sent by first-class mail postage prepaid, to the following: (i) counsel to the Stalking Horse Bidder, Kane Kessler, P.C.; (ii) the Office of the United States Trustee for the Eastern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014; (iii) the Debtor's twenty (20) largest unsecured creditors; (iv) all taxing authorities in New York, including the Internal Revenue Service, and all other federal, state and local taxing and regulatory authorities known to the Debtor to assert jurisdiction over the Purchased Assets or which are reasonably expected by the Debtor to have claims, contingent or otherwise, in connection with the ownership of the Purchased Assets, or to have any known interest

      in the relief requested by the Motion; (v) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002, 6004 or 6006; (vi) all persons or entities known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Purchased Assets; (vii) any party that the Debtor believes may have an interest, or that has previously expressed an interest in purchasing the Purchased Assets; and (viii) all other known creditors of the Debtor.[2]

  b. On or before three (3) business days after entry of the Bid Procedures Order, the Debtor will serve the Notice of Auction and Sale Hearing on all known creditors of the Debtor;

  c. On or before three (3) business days after the entry of the Bid Procedures Order, the Debtor shall serve by first class mail or hand delivery, upon the Landlord a notice, substantially in the form attached hereto as **Exhibit C**, of the proposed assignment of the Lease (the "Notice of Assumption and Assignment"). The Notice of Assumption and Assignment shall identify the Cure Amount that the Debtor believes must be paid to cure all prepetition defaults under the Lease.

16. The Notice of Auction and Sale Hearing and the Notice of Assumption and Assignment to be issued in connection with the proposed sale of the Purchased Assets, substantially in the forms annexed hereto as **Exhibits B and C**, respectively, are approved.

17. Objections, if any, to the relief sought in the Motion, including objections to the Sale of the Purchased Assets free and clear of all liens, claims, interests and encumbrances, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Eastern District of New York on or before July 15, 2016 at 5:00 p.m. (prevailing Eastern Time) pursuant to Federal Rule of Bankruptcy Procedure 6004(b), or such later date and time as the Debtor may agree; and (d) be

---

[2] The Notice of Auction and Sale Hearing will direct parties to contact the Debtor's broker, MYC & Associates, Inc. or counsel for more information and will provide that any party in interest that wishes to obtain a copy of any related document, subject to the execution and delivery of a confidentiality agreement acceptable to the Debtor, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

{Client/082959/1/01116103.DOC;5 }  8

served so as to be received on the same day by: (i) counsel to the Debtor, Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz and Arthur Goldstein; (ii) counsel to the Stalking Horse Purchaser, Kane Kessler, P.C., 1350 Avenue of the Americas, New York, New York 10019, Attn: Robert Kolodney and Darren Berger; and (iii) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (collectively, the "Notice Parties"). All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

18. Any written replies to objections to the relief sought in the Motion with respect to the Sale shall be filed by 12:00 p.m. (prevailing Eastern Time) on the date that is one (1) business day before the Sale Hearing.

19. Any objection by the Landlord (a "Cure Amount/Assignment Objection") to (a) its scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of the Lease, including any objections relating to the adequate assurance of future performance by the Stalking Horse Purchaser, must be in writing, filed with the Court, and be actually received by the Notice Parties on or before July 15, 2016 at 5:00 p.m. (prevailing Eastern Time). A Cure Amount/Assignment Objection must set forth the specific default alleged under the Lease and claim a specific monetary amount that differs from the applicable Cure Amount, if any, and/or further information required of the Stalking Horse Purchaser with respect to adequate assurance of future performance. Notwithstanding the foregoing, as provided in paragraph 24 below, the Landlord shall retain the right to object to the assumption and assignment of its Lease based solely on the issue of whether the Successful Bidder or Backup Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code in the event the Stalking Horse Purchaser is not the Successful Bidder.

20. If no Cure Amount/Assignment Objection is received by the Cure/Assignment Objection Deadline to the Lease, then the assumption and assignment of the Lease may be authorized pursuant to section 365 of the Bankruptcy Code and the applicable Cure Amount, if any, shall be binding upon the Landlord to the Lease for all purposes and shall constitute a final determination of the Cure Amount required to be paid to the Landlord in connection with the assignment of the Lease to the applicable Successful Bidder. The Landlord to the Lease shall be (i) deemed to have waived its right to object to, contest, condition, or otherwise restrict the assumption and/or assignment of the Lease, and (ii) forever barred from objecting to the assumption and/or assignment of the Lease or the Cure Amount (including, without limitation, from asserting any additional cure or other amounts with respect to the Lease arising prior to such assumption and assignment). Furthermore, upon the assumption of the Lease, the applicable Successful Bidder shall enjoy all of the applicable Debtor's rights and benefits thereunder without the necessity of obtaining any party's written consent to such Debtor's assumption and/or assignment of such rights and benefits.

21. If an objection challenges the Cure Amount (or asserts any other objection to assumption and assignment of the Lease), the objection must set forth the Cure Amount being claimed by the objecting party with appropriate documentation in support thereof, and specify (with appropriate supporting documentation) the factual and legal basis for any other objection to the assumption and assignment of the Lease. Upon receipt of a timely filed Cure Amount/Assignment Objection, the Debtor, in consultation with the Stalking Horse Purchaser, is authorized, but not directed, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to the Lease without further order of the Court. In the event that the Debtor and any objecting party are unable to resolve consensually any timely filed

Cure Amount/Assignment Objection, the Court will resolve any such Cure Amount/Assignment Objection at the Sale Hearing (or such other date and time as is fixed by the Court).

22. Except as may otherwise be agreed to by the Successful Bidder and the Landlord to the Lease, at or promptly following the closing of the Sale, the cure of any defaults under the Lease necessary to permit assumption and assignment thereof in accordance with section 365(b) of the Bankruptcy Code, shall be by (i) payment of the undisputed Cure Amount, (ii) payment of the Cure Amount judicially determined by the Court to be the correct amount, and/or (iii) the establishment of a reserve (either in an amount agreed to by the parties or established by the Court) with respect to any disputed Cure Amount that has not been resolved at or prior to the Sale Hearing (which reserve shall for all purposes constitute the maximum Cure Amount that may be due and payable in connection with the assumption and assignment of the Lease).

23. Within one (1) business day after the conclusion of the Auction for the Purchased Assets, the Debtor will file a statement setting forth the identity of the Successful Bidder and Backup Bidder for the Purchased Assets, and the total price to be received for the Purchased Assets and serve such statement on the United States Trustee in accordance with Federal Rule 6004(f)(1).

24. By 5:00 p.m. on the same day after the conclusion of the Auction for the Purchased Assets, the Debtor will serve a notice identifying the Successful Bidder and Backup Bidder to the Landlord's counsel by email. In the event the Stalking Horse Purchaser is not the Successful Bidder, the Landlord to the Lease will have until 5:00 p.m. on the day before the Sale Hearing (the "Adequate Assurance Objection Deadline") to file a written objection to the assumption and assignment of the Lease solely on the issue of whether the Successful Bidder can

provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code. For the sake of clarity, <u>any and all</u> objections to the assumption and assignment of the Lease <u>to the Stalking Horse Purchaser</u>, including without limitation objections based upon adequate assurance of future performance, must be filed by the Cure/Assignment Objection Deadline specified in paragraph 19 above.

25. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

26. Except as otherwise provided in the Stalking Horse Purchase Agreement and this Bid Procedures Order, the Debtor further reserves the right as it may reasonably determine to be in the best interests of its estate, subject to conformity with the Bidding Procedures, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and otherwise best proposal and which is the next highest and otherwise best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate; (e) waive terms and conditions set forth herein with respect to all potential bidders; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) adjourn or cancel the Auction and/or Sale Hearing without further notice; and (i) modify the Bidding Procedures as the Debtor may reasonably determine to be in the best interest of its estate.

27. To the extent that any chapter 11 plan confirmed in this case or any order confirming any such plan or any other order in this case (including any order entered after

conversion of this case to a case under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Bid Procedures Order, the provisions of this Bid Procedures Order shall control.  The Debtor's obligations under this Bid Procedures Order, the provisions of this Bid Procedures Order pertaining to Bidding Procedures and the portions of the Lease Purchase Agreement pertaining to Bidding Procedures (including all obligations in respect of the Bid Protections) shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtor and any reorganized or reconstituted Debtor, as the case may be, after the effective date of a confirmed plan in this case, and shall also survive any order converting this case to a case under chapter 7 of the Bankruptcy Code and any order entered after such conversion, and shall be binding upon any chapter 7 or other trustee appointed in this or any successor case.

28. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Bid Procedures Order shall be effective immediately upon its entry.

29. All time periods set forth in this Bid Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bid Procedures Order.



**Dated: Brooklyn, New York**
      **June 6, 2016**

                                                  **Carla E. Craig**
                                        **United States Bankruptcy Judge**